UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DUSTIN STANTON,<br><br>    Plaintiff,<br><br>v.<br><br>RUBY JOYNER, et al.,<br><br>    Defendants. | Case No. 3:19-cv-00270<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se Plaintiff Dustin Stanton's pretrial detention at the Davidson County Maximum Correctional Center (MCC). (Doc. No. 1.) Stanton, who appears *in forma pauperis*, alleges that MCC officials violated his constitutional rights by failing to protect him from a violent assault by another inmate. (*Id.*) Defendants Officer Jennifer Cobbs, Lieutenant Kevin Cole, and Sergeant Nicholas Pallak have filed a motion to dismiss Stanton's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 15.) Cobbs, Cole, and Pallak invoke the doctrine of qualified immunity and argue that Stanton's claims fail as a matter of law because he has not adequately alleged that they violated his clearly established constitutional rights. (Doc. No. 16.) Stanton has responded in opposition (Doc. No. 23); Cobbs, Cole, and Pallak have filed a reply (Doc. No. 24); and Stanton has filed a sur-reply (Doc. No. 25). For the reasons that follow, the Magistrate Judge will recommend that the Court deny Cobbs, Cole, and Pallak's motion to dismiss.

**I.     Background**

   **A.     Factual Background**[1]

Stanton alleges that, on January 23, 2019, an officer at MCC gave Stanton's bag of commissary items, worth $45.15, to an inmate on Stanton's list of "incompatibles[.]" (Doc. No. 1, PageID# 7.) Stanton filed a claim and was reimbursed for the commissary items. (Doc. No. 1.) On January 24, 2019, "fear[ing] for [his] safety[,]" Stanton asked to be placed in protective custody. (*Id.* at PageID# 7.) His request was granted. (Doc. Nos. 1, 5.)

A month later, on February 24, 2019, Stanton was attacked and beaten unconscious in the recreation yard by inmate Josh Raines. (Doc. No. 1.) Stanton was still in protective custody at the time of the attack. (*Id.*) Raines was "a disruptive inmate serving disciplinary time with a 15[-year] sentence waiting on [a] T.D.O.C. bus to take him to prison[.]" (*Id.* at PageID# 9.) When Stanton was attacked, he was wearing full restraints, including leg irons and a belly chain with handcuffs; Raines was not wearing leg irons, and the handcuffs attached to his belly chain were "loose enough to easily take off." (*Id.* at PageID# 7.) Raines told Stanton, "'I got you [ ]now you check in bit--,' meaning protective custody inmate, and started throwing blow after blow" to Stanton's face and body. (*Id.* (second alteration in original).) Stanton tried to duck his head but could not defend himself because of his restraints. (Doc. No. 1.) Raines knocked Stanton unconscious for a few seconds, injured his face and body, and chipped his teeth. (*Id.*)

Stanton alleges that, "since November 2018[,] . . . numerous inmate[-]on[-]inmate assaults have occurred . . . at MCC . . . ." (*Id.* at PageID# 9.) He states that MCC policies and procedures require officers to separate inmates with different security statuses during recreation. (Doc. No. 1.)

---

[1]     The facts in this section are drawn from Stanton's complaint (Doc. No. 1) and taken as true for purposes of resolving the pending motion to dismiss.

In fact, the MCC recreation yard is designed to implement this policy—it has several "split cages" to segregate inmates with different security statuses, and no more than five inmates are supposed to be in each cage for recreation at one time. (*Id.* at PageID# 8.) But on the day Stanton was attacked, Lt. Cole and Sgt. Pallak, who were working security operations, and Officer Cobbs, who was the recreation officer, "let[ ] ALL status inmates rec together[,]" including inmates serving disciplinary time, like Raines, and inmates in protective custody, like Stanton. (*Id.*) Cobbs also "put[ ] more than 5 inmates" together in the same cage (*id.* at PageID# 9); there were "at least 13 inmates on 1 side of the fence" (*id.* at PageID# 8) that day with "plainly . . . different [security] status[es]" (*id.* at PageID# 9). According to Stanton, "they run recreation like that because it gets done faster and easier" (*id.* at PageID# 8), but they are "not following policies and procedures" (*id.* at PageID# 9).

### B. Procedural History

The Court received Stanton's complaint, request for appointment of counsel, and application to proceed *in forma pauperis* on April 3, 2019. (Doc. Nos. 1, 1-2, 2.) His complaint seeks $250,000.00 in damages from each defendant and injunctive relief allowing him to undergo an MRI and to see a dentist for his injuries. (Doc. No. 1.)

The Court granted Stanton's application to proceed *in forma pauperis*, denied his request to appoint counsel without prejudice to refiling, and screened his complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. (Doc. Nos. 5, 6.) The Court found, for purposes of initial review, that Stanton's complaint states colorable claims under 42 U.S.C. § 1983 against Defendants Cobbs, Cole, and Pallak in their individual capacities for deliberate indifference to his safety in violation

of the Fourteenth and Eighth Amendments. (Doc. No. 5.) However, the Court dismissed Stanton's claims against all other defendants.[2] (Doc. Nos. 5, 6.)

Cobbs, Cole, and Pallak moved to dismiss Stanton's complaint under Rule 12(b)(6) for failure to state a claim. (Doc. No. 15.) They argue that they are entitled to dismissal under the doctrine of qualified immunity "because it was not clearly established that their conduct, as alleged, amounted to a 'failure to protect'" Stanton. (Doc. No. 16, PageID# 71.) Stanton responds that all three defendants were deliberately indifferent to his safety and violated established policies and procedures for segregating inmates during recreation time, that the attack he suffered "could have and should have been prevented[,]" and that Raines's disciplinary record and other evidence will support his claims. (Doc. No. 23, PageID# 90.) Cobbs, Cole, and Pallak reply that Stanton has failed to "provide any support for the notion that any of [them], individually, was subjectively aware of a substantial risk to [Stanton] and disregarded that risk . . . ." (Doc. No. 24, PageID# 96.) Stanton filed a sur-reply without leave, attaching MCC disciplinary records regarding the assault. (Doc. Nos. 25, 25-1.)

---

[2] In the dismissed claims, Stanton alleged that Officers Jennifer Lane and Trevor Matthews were the Unit Post officers responsible for ensuring that all inmates were fully restrained when leaving their cells and that they failed to do their job of fully restraining Raines by "leaving his leg irons completely off and his belly chains handcuffs loose enough to take off . . . ." (Doc. No. 1, PageID# 8.) Stanton also alleged that Administration Staff Member Ruby Joyner, Classification Director Beth Gentry, and Chief of Security Jamie Johnson were all aware that he had been housed in protective custody since January 24, 2019. (Doc. No. 1.) Finally, Stanton named Sheriff Daron Hall and the Davidson County Sheriff's Office as defendants because of the numerous assaults at MCC since 2018 and their "fail[ure] to keep inmates . . . safe by poorly r[u]n security." (*Id.* at PageID# 9.)

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Stanton proceeds pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III. Analysis

"Section 1983 provides a civil enforcement mechanism for all inmates [and pretrial detainees] who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). A plaintiff alleging claims under § 1983 must make two showings to survive a motion to dismiss: "one, 'a plaintiff must allege that a defendant acted under color of state law'; and two, 'a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law.'" *Bright v. Gallia Cty.*, 753 F.3d 639, 653 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012)). Here, Stanton alleges that Davidson County employees Cobbs, Cole, and Pallak showed deliberate indifference to his safety in violation of his Fourteenth and Eighth Amendment right to be free from violence perpetrated by other inmates. (Doc. No. 1.) Cobbs, Cole, and Pallak have raised qualified immunity as an affirmative defense to Stanton's claims. (Doc. Nos. 16, 24.)

"The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Thai*, 707 F.3d 675, 680 (6th Cir. 2013). The goal behind qualified immunity is to "'balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cty.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Because the qualified immunity analysis is fact-intensive and the precise factual basis for a plaintiff's claims may be hard to identify at the pleading stage, courts typically resolve qualified immunity defenses after discovery in the context of a motion for summary judgment. *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 907 (6th Cir. 2019) ("[A]lthough an officer's entitlement to qualified immunity is a threshold question to be

6

resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (alteration in original) (quoting *Osberry v. Slusher*, 750 F. App'x 385, 391 (6th Cir. 2018))); *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) (holding "that it is 'generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity'" because "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify" (alteration in original) (citations omitted)).

To survive a motion to dismiss on qualified immunity grounds, the complaint "must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Cahoo*, 912 F.3d at 898 (alteration in original) (quoting *Courtright*, 839 F.3d at 518). The test is whether, reading the complaint in the light most favorable to Stanton, it is plausible that Cobbs's, Cole's, and Pallak's acts violated Stanton's clearly established constitutional rights. *See id.* This test can be broken into two inquiries. "First, taken in the light most favorable to [Stanton], do the facts alleged show that [each] officer's conduct violated a constitutional right?" *Id.* at 897; *see also Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant."). And second, "is the right clearly established?" *Cahoo*, 912 F.3d at 897.

### A. Whether Stanton Has Plausibly Alleged That Cobbs, Cole, and Pallak Violated His Constitutional Rights

There is no question that the Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v.*

7

*Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). The Supreme Court explained the origin of this protection in *Farmer v. Brennan*:

> Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.

511 U.S. 825, 833 (1994) (alterations in original) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). The same protection extends to pretrial detainees like Stanton under the Fourteenth Amendment's Due Process Clause. *See Richko*, 819 F.3d at 915 ("[U]nder the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates.' (quoting *Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994)); *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." (citations omitted)). Courts therefore analyze failure-to-protect claims brought by pretrial detainees under the Fourteenth Amendment using the same legal framework as those brought by convicted prisoners under the Eighth Amendment. *See Richko*, 819 F.3d at 915.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates," *Farmer*, 511 U.S. at 832 (quoting *Hudson*, 468 U.S. at 526–27), but not every injury suffered by one inmate at the hands of another "translates into constitutional liability for prison officials responsible for the victim's safety[,]" *id.* at 834. "[A] prison official may be held liable . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Under this standard, a plaintiff must show that the risk of harm is sufficiently serious, an objective inquiry, and that prison

8

officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. *Id.* at 834.

At the pleading stage, plaintiffs can satisfy the objective component by plausibly alleging that, "absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm." *Richko*, 819 F.3d at 915 (quoting *Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 361 (6th Cir. 2013)). The subjective component requires plaintiffs to allege that: "(1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Id.* (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). A court may address both components in a single factual analysis. *See id.* at 916 ("[B]ecause the analysis of the facts below establishes . . . that [the plaintiff] has satisfied the subjective component of *Farmer*'s test, the objective component is likewise satisfied based on the same factual analysis.").

The Sixth Circuit has established that "[f]ailure to segregate violent inmates from non-violent inmates" constitutes "'deliberate indifference' and thus . . . violate[s] the eighth amendment where there is a 'pervasive' risk of harm or where the victim belonged to an 'identifiable' group of prisoners for whom risk of assault is a serious problem of substantial dimension." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 815 (6th Cir. 1996) (quoting *Marsh v. Arn*, 937 F.2d 1056, 1061 (6th Cir. 1991)). For example, in *Greene v. Bowles*, the Sixth Circuit reversed a district court's grant of summary judgment to a prison warden accused of violating the Eighth Amendment by placing Traci Greene, a medium-security inmate who was transitioning from male to female, into the same protective custody unit as Hiawatha Frezzell, a maximum-security inmate with a violent prison record who brutally assaulted Greene. 361 F.3d 290, 294–95 (6th Cir. 2004). The Sixth Circuit held that the district court's grant of summary judgment was

9

inappropriate because Greene "raised an issue of fact as to [the] Warden['s] . . . knowledge of a risk to her safety because of her status as a vulnerable inmate and because of Frezzell's status as a predatory inmate." *Id.* at 295. Specifically, Greene offered evidence "from which a trier of fact could conclude that [she] was vulnerable, not just to sexual assault, but also to physical assaults from her fellow inmates," and that the warden was aware that placing Greene in proximity to "other inmates without segregation or protective measures presented a substantial risk to her safety . . . ." *Id.* at 293. Greene also "presented evidence from which a trier of fact could conclude that [the] [w]arden . . . was in fact aware of the substantial risk Frezzell posed to any inmate with whom he was placed in" protective custody. *Id.* at 294.

The Western District of Tennessee applied the Sixth Circuit's failure-to-segregate standard and found Eighth Amendment violations in a case similar to Stanton's. In *Miller v. Shelby County*, protective-custody inmate Jacob Randall Miller was attacked during recreation time at the Shelby County Correctional Center (SCCC) by pretrial detainees Thomas Cummings and Rory Haywood, known gang members who had received frequent disciplinary reports while housed at SCCC. 93 F. Supp. 2d 892, 894–95 (W.D. Tenn. 2000). At the time of the attack, "Miller was wearing leg irons and Haywood and Cummings were not." *Id.* at 895. Miller filed a municipal liability claim against Shelby County under 42 U.S.C. § 1983, alleging that SCCC's policy of allowing inmates to take recreation together regardless of security classification led to violation of his Eighth Amendment rights. *Id.* at 897. The court granted summary judgment to Miller, finding "that he was incarcerated under conditions posing a substantial risk of serious harm[,]" and that "SCCC officials were aware of a substantial risk of serious harm" and "failed to take reasonable steps to avoid the known risk." *Id.* at 898, 900. Among other things, the *Miller* court found that: "gang violence on non-gang inmates was not uncommon" at SCCC; the summary judgment record was

"replete with evidence that Cummings and Haywood were disruptive, had violent tendencies, and received frequent disciplinary reports"; and, "[o]n numerous occasions, Mr. Miller requested protective custody for the sole reason that he feared he would be physically attacked by gang members." *Id.* at 898, 899. The court therefore concluded that Shelby County was deliberately indifferent to Miller's safety in violation of the Eighth Amendment. *Id.* at 902.

Here, Stanton has alleged facts from which the Court could reasonably infer that he was exposed to a substantial risk of serious harm and that Cobbs, Cole, and Pallak knew of and disregarded that risk. First, Stanton alleges that, in the months leading up to his attack, there had been "[n]umerous inmate[-]on[-]inmate assaults" at MCC. (Doc. No. 1, PageID# 9.) He alleges that MCC security policies required officials to separate inmates of different security statuses during recreation time and that the recreation yard was specifically designed with split cages to implement this policy. (Doc. No. 1.) He alleges that security policies also prohibited officials from placing more than five inmates in a recreation space at one time. (*Id.*)

Stanton alleges that, on the day he was attacked, Cobbs, Cole, and Pallak disregarded these security policies because it was "faster and easier" not to follow them, and that Stanton "had to pay for it by getting viciously assaulted by a[n] unrestrained inmate." (*Id.* at PageID# 8.) Specifically, Stanton alleges that Officer Cobbs was the recreation officer on duty the day of the attack and that she violated MCC policies and procedures in two ways: by failing to separate inmates with different security statuses during recreation time and by putting thirteen inmates with different statuses in a single cage. (Doc. No. 1.) Lt. Cole and Sgt. Pallak were in charge of security operations that day and were watching security camera footage from their office. (*Id.*) It was their job to make sure that security concerns were addressed. (*Id.*) But Cole and Pallak also violated

11

MCC policies and procedures by disregarding the fact that inmates of all security statuses were taking recreation together and that thirteen inmates were taking recreation in a single cage. (*Id.*)

Stanton has also alleged that he faced a particular risk of harm when he was attacked. Stanton was housed in protective custody at the time of the assault. (*Id.*) He had requested placement in protective custody a month earlier, telling MCC officials that he was "in fear for [his] safety . . . ." (*Id.* at PageID# 9.) When Raines attacked Stanton, he called Stanton by a slur based on Stanton's protective custody status. (Doc. No. 1.) Stanton has further alleged that Raines was particularly dangerous. Raines was known to be "a disruptive inmate" who was "serving disciplinary time[.]" (*Id.* at PageID# 9.) Stanton states that, despite his disciplinary history, Raines was not fully restrained at the time of the attack. (Doc. No. 1.)

These allegations, construed in Stanton's favor, support a reasonable inference that Stanton was incarcerated under conditions posing a substantial risk of serious harm and that Cobbs, Cole, and Pallak each knew of and disregarded that risk. Stanton has plausibly alleged the existence of MCC security policies requiring officials to separate inmates of different security statuses during recreation, and he is entitled to a reasonable inference that Cobbs, Cole, and Pallak were aware of these policies by virtue of their positions as MCC security and recreation officers. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." (citation omitted)). He is likewise entitled to reasonable inferences that Cobbs, Cole, and Pallak were aware of MCC's recent history of inmate-on-inmate violence, Stanton's placement in protective custody, and Raines's disciplinary status. Stanton has plausibly alleged that Pallak disregarded these substantial risks of serious harm by

12

allowing Stanton, Raines, and eleven other inmates with different security statuses to take recreation together on the day he was attacked. Similarly, he has plausibly alleged that Cobbs and Cole disregarded the same substantial risks of serious harm by failing to intervene when they saw on the security monitors that thirteen inmates were taking recreation together and were not separated by security status. Stanton thus has plausibly alleged that Cobbs, Cole, and Pallak showed deliberate indifference to his safety in violation of his constitutional rights. *Cf. Miller*, 93 F. Supp. 2d at 902.

Cobbs, Cole, and Pallak's arguments in support of dismissal are unpersuasive. Their argument that Stanton's "[c]omplaint is devoid of any allegation that there had . . . been past violence or that any inmate had been injured as a result of allowing one single recreation period for all inmates" (Doc. No. 16, PageID# 70) ignores Stanton's allegations that MCC had a recent history of inmate-on-inmate violence, that MCC security policies required officers to separate inmates by security status and limit the number of inmates placed together for recreation time, and that MCC's recreation yard was specifically designed to allow compliance with these policies. *See Tillery v. Owens*, 719 F. Supp. 1256, 1276 (W.D. Pa. 1989) ("Deliberate indifference . . . may be shown where, in the face of high levels of prison violence, officials fail to provide adequate guards or use physical facilities that do not enable authorities to detect or prevent violence."). Similarly, their argument that Stanton has not alleged that Raines "was known to start violence during recreation time or any other time" (Doc. No. 16, PageID# 70) overlooks Stanton's allegations that, in addition to being known as disruptive, Raines was serving disciplinary time. Courts routinely consider an inmate's prison disciplinary convictions, security status, and reputation as disruptive or violent in determining the risk of harm posed to other inmates. *See, e.g.*, *Greene*, 361 F.3d at 294–95 (considering inmate's prison misconduct record, "'long institutional history of being a

disruptive, violent inmate,'" and "maximum-security" status); *Miller*, 93 F. Supp. 2d at 899 (finding that inmates "were disruptive, had violent tendencies, and received frequent disciplinary reports"). Cobbs, Cole, and Pallak's argument that Stanton did not allege "that he and Raines were known to be 'incompatibles' such that prison staff would have known to keep them separated" (Doc. No. 16, PageID# 70) similarly fails. The Supreme Court held in *Farmer* that a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." 511 U.S. at 843; *see also Greene*, 361 F.3d at 294 ("[W]here a specific individual poses a risk to a large class of inmates, that risk can . . . support a finding of liability even where the particular prisoner at risk is not known in advance.").

At the pleading stage, the Court's task is to determine only if Stanton "is entitled to offer evidence to support [his] claims[,]" not whether he "will ultimately prevail" by proving the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Stanton has plausibly alleged that Cobbs, Cole, and Pallak violated his constitutional right to be free from violence perpetrated by other inmates while he was detained pending trial. The Court therefore considers whether Stanton's rights were clearly established at the time of the assault.

### B. Whether Stanton's Constitutional Rights Were Clearly Established

A right is "clearly established" for purposes of qualified immunity "if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Cahoo*, 912 F.3d at 898 (alterations in original) (quoting *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015)). To determine if a right is clearly established, courts "look principally to the law of this circuit and to the Supreme Court." *Perez v. Oakland Cty.*, 466 F.3d

416, 427 (6th Cir. 2006); *see also Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) ("[I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law."). "The operative inquiry is not whether a previous court faced perfectly analogous facts—it is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Cahoo*, 912 F.3d at 904 (quoting *Baynes*, 799 F.3d at 610). Here, based on Supreme Court and Sixth Circuit precedent, it would have been clear to a reasonable officer in Cobbs's, Cole's, and Pallak's positions that failing to segregate protective custody inmates from inmates with different security statuses at any time, including during recreation, was unlawful.

It has long been clearly established that the Eighth and Fourteenth Amendments require prison officials to "take reasonable measures to guarantee the safety of" prisoners and pretrial detainees, *Hudson*, 468 U.S. at 526–27, and that officials violate this obligation by failing to segregate violent inmates from non-violent inmates "where there is a 'pervasive' risk of harm or where the victim belonged to an 'identifiable' group of prisoners for whom risk of assault is a serious problem of substantial dimension[,]" *Street*, 102 F.3d at 815; *see also Farmer*, 811 at 843 ("The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health,' and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993))). The contours of this right to be free from violence at the hands of other

15

inmates were therefore sufficiently clear to give a reasonable officer at MCC fair warning that—in light of the history of inmate-on-inmate violence at MCC, MCC security policies for separating inmates of different security statuses during recreation, Stanton's vulnerability as a protective custody inmate, and the risk posed by Raines—failing to segregate inmates of different security statuses during recreation was unlawful.

Cobbs, Cole, and Pallak's argument that Stanton's asserted right was not clearly established because they "have located no case law or other authority . . . suggesting that allowing one single recreation period for inmates is unlawful or can constitute 'deliberate indifference' to inmate safety" is unpersuasive. (Doc. No. 16, PageID# 70.) The Sixth Circuit has explicitly held that, under Supreme Court precedent, "neither a 'materially similar,' 'fundamentally similar,' or 'case directly on point'—let alone a factually identical case—is required, and that the specific acts or conduct at issue need not previously have been found unconstitutional for a right to be clearly established law." *Baynes*, 799 F.3d at 614 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011)); *see also Courtright*, 839 F.3d at 520 (quoting *Baynes*, 799 F.3d at 614). Moreover, the defendants' argument is belied by *Miller v. Shelby County*, a case from the Western District of Tennessee applying familiar Sixth Circuit and Supreme Court precedent to find that a prison's policy of allowing inmates of different security levels to take recreation together showed deliberate indifference to inmate safety and therefore violated the Eighth Amendment. 93 F. Supp. 2d at 897–901.

Because Stanton has plausibly alleged the violation of his clearly established constitutional rights, Cobbs, Cole, and Pallak have not shown that they are entitled to qualified immunity based on the pleadings.

**IV.     Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Defendants Cobbs, Cole, and Pallak's motion to dismiss (Doc. No. 15) be DENIED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 6th day of February, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge