IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DUSTIN STANTON, | ) |
| Plaintiff, | ) |
| | ) Case No. 3:19-cv-00270 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| RUBY JOYNER, et al., | ) MAGISTRATE JUDGE |
| | ) NEWBERN |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court is a motion to dismiss Plaintiff's Amended Complaint (Doc. No. 63) filed by Defendants Trevor Matthews, Jennifer Lane, Jennifer Cobbs, Nicholas Pallak, and Kevin Coles (collectively, the "Officer Defendants") (Doc. Nos. 71, 72). Plaintiff responded to the motion (Doc. No. 82) and the Officer Defendants filed a reply (Doc. No. 88). The parties also filed supplemental briefs. (Doc. Nos. 108 and 109). Defendants the Metropolitan Government of Nashville and Davidson County ("Metro Nashville") and Sheriff Daron Hall also filed a motion to dismiss, which the Court will address separately.

### I. BACKGROUND[1]

**A. The Assault**

This action arises out of an assault on Plaintiff Dustin Stanton by another inmate while both were housed in a restrictive housing unit at the Davidson County Maximum Correctional Center (the "Metro Jail") in Nashville, Tennessee. (¶ 10). Inmates may be placed in restrictive housing for a variety of reasons, including disciplinary, medical, and administrative reasons, or for protective custody. (¶ 11). After he requested to be placed in protective custody based on fear for

---

[1] Unless otherwise specified, the facts in this section are as alleged in the Second Amended Complaint (Doc. No. 107). Citations to ¶ __ are to the Second Amended Complaint.

his safety, Plaintiff was placed in restrictive house with an "administrative status" designation. (¶¶ 12-15).

On February 24, 2019, Plaintiff was beaten about the head and body in the Metro Jail recreation yard by fellow inmate Josh Raines. Plaintiff alleges Raines, who was awaiting transport to prison, was placed in the restrictive housing unit due to his disciplinary status as a "disruptive individual who posed an extra threat to the safety and security of the Metro Jail, its residents (including Mr. Stanton,) and its staff." (¶ 17).

Although Metro Jail policy requires inmates in the restrictive housing unit to be in full restraints (belly chain, wrist restraints, and leg irons) when they are outside of their individual cells, on the day of the assault, Raines was not restrained in leg irons and his wrists restraints were applied too loosely so that Raines was able to slip his hands from the restraints. (¶¶ 34, 38-45). Plaintiff, on the other hand, was fully restrained, and therefore unable to defend himself from the assault. In addition, Plaintiff claims that when he was attacked by Raines, there were more than twice as many inmates in the recreation yard than is allowed by written policy.[2] (¶ 19).

Plaintiff brings claims for violation of his Eighth Amendment rights against five security officers he alleges recklessly disregarded a substantial risk of serious harm to his safety by failing to protect him from assault by Raines.

---

[2] Metro Jail had two written versions of the Standard Operating Procedure ("SOP") for "Out of Cell" time. (¶¶ 52, 52.1). One SOP provided that "[a]t no time will there be more than 6 inmates secured in any one section of the rec yard, unless space constraints dictate otherwise (too many house alone / rec alone)." (¶ 52). This SOP contained an effective date of November 29, 2018. (¶¶ 52-53). A second SOP with the same effective date does not include the limitation on the number of inmates allowed in any one section of the recreation yard. (¶ 53). In the supplemental briefing, Defendants explain that the SOP limiting the number of inmates in the recreation yard to six was actually not in effect at the time of Plaintiff's altercation. They state that the effective date was not updated following a revision and that the written policy limiting the number of inmates in the recreation yard should have been identified as a "draft." (Doc. No. 108). Questions regarding which of the policies was in effect at the time of the assault are not appropriate for resolution on a motion to dismiss.

1. Lane and Matthews

Plaintiff alleges Jennifer Lane and Trevor Matthews, who were Unit Post Officers for Mr. Raines' pod on the day of the assault, applied the Raines' wrist restraints too loosely so that Raines was able to slip his hands out of the restraints. (¶¶ 36-39, 41, 43). Plaintiff alleges Lane was additionally responsible for restraining Raines in leg irons and failed to do so. (¶¶ 40, 42).

Metro Jail issued letters to both officers notifying them that their actions violated jail policies and procedures. Lane received a letter of reprimand for failing to ensure Raines was in full restrains when he left his cell. (¶ 47). Matthews received a letter of concern for failing to follow standard operating procedure by allowing too many inmates out of their cells at once. (¶ 48). Plaintiff alleges this was not the first time Matthews had been found to violate policies and procedures. Matthews received numerous letters of reprimand and letters of concern based on his failure to follow policies and procedures, many of which were directly related to mitigating risks to inmate safety. (¶¶ 73-74).

2. Cobbs

Plaintiff alleges Officer Jennifer Cobbs, the recreation officer on the day of the assault, placed more than twelve inmates in the recreation yard at the same time, placed disciplinary status and administrative status inmates in the recreation yard at the same time, and did not ensure Raines was properly restrained before sending him into the recreation yard. (¶¶ 56-59). Metro Jail issued Cobbs a letter of concern for failing to ensure Raines was fully in restraints before entering the recreation yard. (¶ 62).

3. Pallak and Cole

Defendant Officers Nicholas Pallak and Kevin Cole were the two supervising officers responsible for security operations the day of the assault. Plaintiff alleges Pallak and Cole knew Raines was in restrictive housing because of his disciplinary status and knew Plaintiff was there

3

on administrative status based on his request for protective custody. Plaintiff alleges that, on the day of the assault, Pallak and Cole observed Cobbs place Plaintiff and Raines in the recreation yard together and observed and allowed Cobbs to place more than six inmates in the recreation yard at the same time. (¶¶ 120, 122). Plaintiff alleges this was not an isolated event and that officers routinely allowed disciplinary status inmates in the recreation yard with inmates who had requested protective custody and routinely allowed more than six inmates in the recreation yard at the same time. (¶¶ 119, 121). Plaintiff contends Pallak and Cole encouraged, authorized, approved, and/or acquiesced in this conduct, and that, at least with regard to Pallak, his failure to require subordinate officers to follow policies and procedures was a known problem (¶¶ 77, 121). Plaintiff alleges that, prior to the assault, Pallak "received a letter of reprimand for his 'failure to enforce policies and procedures' and 'failure to hold[] [his] staff accountable' for ignoring safety rules." (¶ 77).

**B. Retaliation**

Plaintiff claims that Pallak, allegedly in retaliation for filing this lawsuit, conducted an "aggressive and extended inspection" of Plaintiff's cell, during which he soiled Plaintiff's clean laundry and seized his authorized, medically necessary footwear. (¶¶ 83, 84). During the inspection, which took place shortly after Plaintiff served Pallak with discovery, Pallak allegedly made disparaging comments toward Plaintiff, referring to him as "the person who brought a 'fraudulent' lawsuit." (¶ 84).

## II. PROCEDURAL HISTORY

Plaintiff initiated this case *pro se* on April 3, 2019, (Doc. No. 1), and the Court reviewed Plaintiff's claims pursuant to the Prison Litigation Reform Act. (*See* Order, Doc. No. 5). The Court dismissed claims that Officers Lane, Matthews, and Cobbs violated Plaintiff's Eighth Amendment rights by failing to properly restrain Raines and/or ensure he was properly restrained before entering the recreation yard. (*Id*. at 6-7). The Court held that "such claims of officers failing to

4

Case 3:19-cv-00270   Document 113   Filed 09/30/21   Page 4 of 19 PageID #: 885

'professionally d[o] th[eir] job' allege mere negligence," which is insufficient to support a constitutional claim. (*Id*. at 7 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). The Court also dismissed several other defendants and claims no longer at issue in the current iteration of the complaint. The Court found Plaintiff stated non-frivolous claims against three defendants, Jennifer Cobbs, Kevin Cole, and Nicholas Pallak, for violation of his Eighth Amendment rights and ordered process to issue on that claim. (*Id*. at 8).

Defendant Cobbs, Cole, and Pallak moved to dismiss based on qualified immunity. (Doc. No. 16). The Court denied the motion to dismiss and appointed counsel for Plaintiff. (*See* Order, Doc. No. 30, adopting Report and Recommendation, Doc. No. 28; and Order Appointing Counsel, Doc. No. 31).

With assistance of counsel, Plaintiff filed an Amended Complaint. (Doc. No. 63). The Amended Complaint reasserts claims related to the assault against correctional officers Jennifer Cobbs, Kevin Cole, and Nicholas Pallak, as well as two officers, Jennifer Lane and Trevor Mathews, who were named in the original complaint, but dismissed on initial review (collectively "the Officer Defendants"). (*Id*.). The Amended Complaint also adds a claim for First Amendment Retaliation against Officer Pallak, and against Darron Hall in his official capacity as Sheriff of Davidson County (the Davidson County Sheriff's Office was named in the original complaint), and against the Metropolitan Government of Nashville and Davidson County, Tennessee. (*Id*.).

The Officer Defendants moved to dismiss the claims against them on grounds of qualified immunity. (*See* Doc. Nos. 71, 72). Sheriff Hall and Metro Nashville also filed a motion to dismiss, which the Court will address separately.

After briefing on the motions to dismiss was completed, with leave of Court, Plaintiff filed a Second Amended Complaint. (Doc. No. 107). The Second Amended Complaint amends

5

allegations to reflect that Metro Jail had two written SOPs with the same effective date. One SOP limited the number of inmates in an area of the recreation yard to six, the other contains no such limitation. The parties filed supplemental briefs addressing the effect of the amendments on the pending motions. (Doc. Nos. 108, 109).

### III. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### IV. ANALYSIS

The Officer Defendants argue they are entitled to qualified immunity because Plaintiff has not alleged sufficient facts to show retaliation by Pallak or to show that the individual officers' conduct violated his constitutional rights under a failure to protect theory.

To overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Moderwell v. Cuyahoga Cnty., Ohio*, 997 F.3d 653, 659-60 (6th Cir. 2021) (quoting *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020)). "[T]he plaintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

## A. Failure to Protect

At step one of the inquiry, the Court considers whether Plaintiff has adequately alleged Defendants violated his constitutional rights by failing to protect him from assault by another prisoner. Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of inmates," including a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984), and *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988), cert. denied 488 U.S. 823 (1988)).[3] However, not "every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials." *Id*. at 834 (internal quotations omitted). "For a failure to protect claims to lie against a prison official, the plaintiff must show that: (1) 'objectively,' he was 'incarcerated under conditions posing a substantial risk of serious harm'; and (2) the official acted with 'deliberate indifference' to inmate safety, meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021). Deliberate indifference requires more than "mere negligence." *Id*. at 914 (citing *Farmer*, 511 U.S. at 835). Indeed, allegations that entail "mere negligence" are not actionable under Section 1983. *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

### 1. Defendants Matthews and Lane

The Amended Complaint alleges that to protect against a substantial risk of serious harm to inmates, Metro Jail employees are required to place Restrictive Housing Unit inmates in full

---

[3] As a pretrial detainee, Plaintiff's constitutional claims are for violation of his substantive due process rights under the Fourteenth Amendment. *Beck v. Hamblen Cty., Tenn*., 969 F.3d 592, 601 (6th Cir. 2020). The Sixth Circuit has held "that *Farmer*'s test for a prisoner's claim under the Eighth Amendment applies 'with equal force'" in this context. *Id*.

restraints when outside their individual cells. (¶¶ 34-35). On the day of the assault, Defendant Matthews, who was responsible for applying Raines's wrist restraints, applied them too loosely. (¶¶ 36-38). Plaintiff alleges Defendant Lane, who was responsible for attaching Raines's leg irons and restraining his hands with a belly chain and wrist restraints, failed to attach his leg irons altogether, and left his belly chain and wrist restraints too loose. (¶ 40-43). Plaintiff alleges neither Defendant Matthews nor Defendant Lane ensured Raines was in full restraints before sending him to the recreation yard, and by doing so they demonstrated reckless disregard of a substantial risk of serious harm to the safety of Plaintiff and others at the Metro Jail. (¶¶ 44-46).

With regard to the subjective element, Defendants argue Plaintiff has not plausibly alleged Defendants Matthews and Lane were deliberately indifferent to a substantial risk of serious harm. They contend that, at most, the failure to ensure Raines was properly restrained constitutes negligence and/or a violation of internal policy, neither of which constitutes "deliberate indifference." Defendant notes that, in reviewing Plaintiff's original *pro se* complaint, the Court dismissed Plaintiff's claims against these defendants on precisely these grounds. (*See* Doc. No. 5, at 6-7 (finding Plaintiff's claim that Defendants Lane and Matthews failed to properly restrain Raines alleged "mere negligence" which does not support a constitutional claim) (citing *Daniels*, 474 U.S. at 328)).

Plaintiff argues that the Amended Complaint bolsters the allegations in the original complaint by adding the allegation that the officers failure to ensure Raines was fully restrained "demonstrated reckless disregard to a substantial risk of serious harm to the safety of Mr. Stanton and others at the Metro Jail." (¶ 46).

As alleged, Plaintiff's claim amounts to little more than that Officers Lane and Matthews were not very good at their job, which in this case was to fully restrain Raines before he left his

8

Case 3:19-cv-00270   Document 113   Filed 09/30/21   Page 8 of 19 PageID #: 889

cell. Even accepting that these Defendants knew the reason Raines (and all inmates) was to be in restraints was for the safety of others at the jail, there are no allegations from which to infer that their undisputedly poor execution of their job duties amounted to anything more than negligence.

Because Plaintiff has failed to state a plausible claim that Defendants Matthews or Lane violated his constitutional rights, the claim against them will be dismissed.

2. Defendant Cobbs

The Amended Complaint alleges that Defendant Cobbs, the recreation officer on the day of the assault placed more than twelve inmates in the recreation yard at the same time, placed disciplinary status and administrative status inmates in the recreation yard at the same time, and allowed Raines into the recreation yard without ensuring he was fully restrained. (¶¶ 56-59). Defendants argue Plaintiff has not adequately pleaded the objective or subject elements of the claim against Defendant Cobbs and that, even if plaintiff adequately alleged a violation of his constitutional rights, those rights were not clearly established at the time of the alleged violation.

The Court previously found Plaintiff stated a claim against Cobbs. (See Report and Recommendation, Doc. No. 28, adopted by the Court in Doc. No. 30). Defendants argue that the Court's previous decision has no bearing on the instant motion because Plaintiff's original *pro se* complaint was reviewed under a less stringent standard afforded *pro se* complainants and because the Court's previous ruling was made without the benefit of consideration of the Sixth Circuit's decision in *Ashford v. Raby*, 951 F.3d 798 (6th Cir. 2020), which was issued the day after the Court's Order. (Def. Reply, Doc. No. 88 at 1 and 2, n.1).

With regard to the objective element, Defendants argue that, aside from Raines' disciplinary status, there are not "*any* factual allegations" to suggest that Raines "posed an extra threat" or was "unusually violent or dangerous." (Def. Br., Doc. No. 72 at 7-8). As the Court

9

Case 3:19-cv-00270   Document 113   Filed 09/30/21   Page 9 of 19 PageID #: 890

previously explained, at the pleading stage, "plaintiffs can satisfy the objective component by plausibly alleging that, 'absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm.'" (Doc. No. 28, at 9 (quoting *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016)). "[O]ne prison inmate's threat to the health and safety of another inmate is 'sufficiently serious' to satisfy [the objective] requirement." *Richko*, 819 F.3d at 915 (quoting *Williams v. McLemore*, 267 F. App'x 1, 2007 WL 1748146, at * 9 (6th Cir. 2007).

To the extent that Plaintiff is required to allege that Raines presented substantial risk to the safety of other inmates, at the pleadings stage Plaintiff's allegation that Raines was on disciplinary status is sufficient to meet this standard. The Court notes, however, that Plaintiff has specifically alleged that Raines "was a disruptive individual who posed an extra threat to the safety and security of the Metro Jail, its residents (including Mr. Stanton,) and its staff." (¶ 17). Moreover, the risk to safety is not predicated solely on Raines' presence in the jail. As alleged by Plaintiff, the risk to safety was based on a combination of factors, including Raines' disciplinary status and that he was not fully restrained, but also that disciplinary status inmates were placed in the recreation yard with inmates who had requested protective custody and were on administrative status, that Plaintiff was fully restrained while Raines was not, and that the number of inmates in the recreation yard (at least 13), increased the risk harm to inmates. While there is some question about whether the number of inmates in the recreation yard was governed by written policy, at this stage, Plaintiff plausibly alleges that the number of inmates in the recreation yard resulted in a substantial risk of serious harm. (*Id.*, ¶¶ 12-19, 36-45, 52-58). At this stage, these allegations are more than sufficient to satisfy the objective component.

With regard to the subjective element, at this stage, Plaintiff must allege the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist

if reasonable measures were not taken, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk. *Farmer*, 511 U.S. at 837.

Plaintiff alleges that the totality of circumstances under which Defendant Cobbs placed Raines and Stanton in the recreation yard together demonstrated reckless disregard to a substantial risk of serious harm to the safety of Plaintiff and others at the Metro Jail. Those circumstances include that Cobbs knew Raines was on disciplinary status and was "disruptive individual who posed an extra threat to [] safety and security" and he was not fully restrained, which was a violation of Metro Jail policy in place for safety. Nevertheless, Cobbs placed Raines in the recreation yard with Stanton, a pretrial detainee on administrative status after having requested protective custody, who was fully restrained and, therefore, unable to defend himself in the event of an attack. These allegations are sufficient to plausibly infer that Cobbs was aware of a substantial risk to inmate safety by placing Raines and Stanton in the recreation yard together under these circumstances. As stated above, Plaintiff also alleges that there were more inmates in the recreation yard than was reasonably safe and there is some question whether there was a written policy governing this issue. The applicable policy certainly has some bearing on whether Defendant Cobbs was aware that 13 inmates in the recreation yard posed an increased safety risk. However, at this stage, Plaintiff has alleged facts from which the Court can infer that 13 inmates in the recreation yard, particularly when at least one of those inmates was a disciplinary status inmate who was not fully restrained, created a substantial risk of serious harm to the other inmates in the recreation yard, including Stanton, and that Cobbs knew of and disregarded that risk.

Defendants argue that Plaintiff has not demonstrated Defendant Cobbs was deliberately indifferent to his safety. Defendants rely upon a host of cases, each of which addresses a different aspect of the totality of conduct alleged here. For example, Defendants argue that a failure to follow

11

regulations is not, in and of itself, deliberate indifference; nor is comingling inmates of different security classes; nor is allowing more than six inmates in the recreation yard at the same time. (*See* Def. Br., Doc. No. 72 at 8-10).

Defendants' arguments fail to address the totality of circumstances alleged here. Considered in the light most favorable to Plaintiff, the facts alleged plausibly suggest that Defendant Cobbs was aware that the circumstances under which she placed Plaintiff in the recreation yard constituted a significant risk to his safety and that she disregarded that risk. Accordingly, the Court finds that Plaintiff has plausibly alleged Cobbs violated his constitutional rights under the Eighth Amendment.

   3. Defendants Pallak and Cole

Plaintiff claims Defendants Pallak and Cole are liable in their roles as supervisors. Under Section 1983, supervisors cannot be held vicariously liable for the acts of their subordinates. They must have "implicitly authorized, approved, [] knowingly acquiesced," or in some other way participated in the unconstitutional conduct. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiff alleges recreation officers routinely allowed more than six inmates in the recreation yard at the same time and allowed disciplinary status and administrative status inmates in the same recreation yard and that Defendants Pallak and Cole authorized, approved, or knowingly acquiesced in this practice. (¶¶ 125-26). In addition, Plaintiff alleges Defendants Pallak and Cole failed to ensure the recreation officers properly restrained inmates before allowing them into the recreation yard. (¶ 127).

Defendants seek dismissal of the claim against Pallak and Cole on grounds that Plaintiff has not plausibly alleged an underlying constitutional violation by the recreation officers. This argument is unavailing. As stated above, Plaintiff has adequately alleged an underlying

12

constitutional violation by Cobbs. Although Pallak and Cole are not alleged to have authorized or even been aware of Cobbs's failure to ensure Raines was fully restrained, they are alleged to have been aware of and condoned the practice of allowing disciplinary status inmates to recreate together with inmates on administrative status and allowing overcrowding of the recreation yard, potentially in violation of policies in place for safety reasons. In light of the alleged policy in place limiting the number of inmates in the recreation yard, it is plausible that Pallak and Cole were aware that allowing more than that the maximum number of inmates in the recreation yard, particularly when some of the inmates were on disciplinary status, created a substantial risk to inmate safety, and that they disregarded this risk by allowing such practices to continue.

The Court finds Plaintiff has plausibly alleged that Pallak and Cole violated his constitutional rights under the Eighth Amendment by failing to protect him from the assault.

### B. Clearly Established

The second step of the qualified immunity inquiry requires the plaintiff to plausibly allege that the constitutional right at issue was "clearly established" at the time of the alleged violation.

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Moderwell*, 997 F.3d at 660 (citing *Ashcroft*, 563 U.S. at 741). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id*. (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). There does not have to be a case "directly on point," but the clearly established law may also not be defined at a "high level of generality." *Id*. (citing *Wesby*, 138 S. Ct. at 590, and *Ashcroft*, 563 U.S. at 741). However, there can be the "rare 'obvious case'" where

13

the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id*. (citing *Wesby*, 138 S. Ct. at 590).

The Sixth Circuit recently address qualified immunity in the context of motions for dismissal under Rule 12. *See Moderwell*, 997 F.3d at 660 (deciding a motion for judgment on the pleadings). Particularly with regard to the "clearly established law" prong of the analysis, the Court noted that qualified immunity is typically decided on summary judgment and not dismissal under Rule 12 because "[a]bsent any factual development beyond the allegations in the complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not." *Id*. (citing *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)).

With this in mind, the Court is cognizant that at the motion to dismiss stage where the Court is limited to the allegations in the complaint, the Court cannot tell whether it would have been "obvious" a reasonable corrections officer that placing a fully restrained pretrial detainee who had expressed concern for his personal safety in a recreation yard with a not-fully-restrained inmate on disciplinary status because he was "disruptive" and posed an "extra threat" to safety and security of the other inmates, with more inmates than is reasonably safe or allowed by policy (depending on which policy was in place) violates the victims constitutional rights.

Accordingly, the Court finds itself confronted with the very reason for the Sixth Circuit's preference for reserving decision on defendants' entitlement to qualified immunity until the facts are fully known. The Court does not find cause to depart from this "preference" here.

The Court recognizes that Pallak and Cole are not alleged to have known that Raines was placed in the recreation area despite not being fully restrained. Nevertheless, the same rationale applies. At this stage, without development of the facts, the Court cannot determine whether it was

14

clearly established that placing Raines and Plaintiff in the recreation yard under these circumstances violated Plaintiff's constitutional rights.

Plaintiff has sufficiently alleged that Cobbs, Pallak, and Cole violated his Eighth Amendment rights. At this juncture, these defendants are not entitled to qualified immunity.

**C. Retaliation**

Plaintiff alleges that days after being served with discovery in this litigation, Defendant Pallak conducted an aggressive and extended inspection of Plaintiff's cell, during which he soiled Plaintiff's clean laundry and seized his medically necessary footwear. During the inspection, Pallak allegedly referenced the pending litigation, disparaging Plaintiff as the person who brought a "fraudulent" lawsuit against Defendants. Plaintiff claims the aggressive inspection was in retaliation for filing this lawsuit.

A First Amendment retaliation claim requires a plaintiff to establish: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The parties agree that the filing of a lawsuit is protected speech. *See e.g., Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The elements at issue are the second and third elements: whether the adverse action would deter a person of ordinary firmness from pursuing the lawsuit and the causal connection.

Defendants argue Plaintiff's continued pursuit of this litigation after the inspection means he cannot plausibly allege the inspection would not deter a "litigant of ordinary firmness." However, the inquiry on this element is objective and "does not depend on how the particular

15

plaintiff reacted," *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). As Defendants acknowledge in their reply brief, the relevant question is "whether the defendants' actions are 'capable of deterring a person of ordinary firmness.'" (Def. Reply, Doc. No. 88 at 4 (citing *Bell*, 308 F.3d at 606)). Plaintiff's allegation that Pallak engaged in an extended inspection of his cell, soiled his clean laundry, and confiscated his medical items, sufficiently alleges an adverse action.

As to causation, Defendants argue that Plaintiff cannot establish that the inspection of his cell was motivated by his filing this lawsuit because Defendant Pallak was not aware that Plaintiff sought discovery until after the alleged retaliation and Defendant Pallak's "mere reference" to this litigation is insufficient, by itself, to establish a causal connection between this litigation and the inspection.

Defendants' arguments are unpersuasive for several reasons. First, the standard on a motion to dismiss is not whether Plaintiff can prove his claim, but whether he has alleged facts that from which the court can reasonably infer the defendant is liable for the alleged conduct.

Second, in an effort to establish that Defendant Pallak was unaware of the service of discovery when he searched the cell, Defendants have attached several exhibits to their motion to dismiss, which are neither referenced in the complaint nor central to the claims. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (on a motion to dismiss the Court may consider documents referenced in a plaintiff's complaint that are central to plaintiff's claims, matters of which a court may take judicial notice, documents that are a matter of public record, and letters that constitute decisions of a government agency).

Defendants argue that the exhibits, which are emails and a letter between counsel and from defense counsel to Defendant Pallak, may be considered because they serve to establish a timeline and "the temporal proximity between the cell inspection and the service of discovery is central to

Plaintiff's claim that the inspection was motivated by this lawsuit." (Def. Br., Doc. No. 72 at n. 5). The exhibits may be relevant evidence in this case, but they are not appropriate for consideration on a motion to dismiss. Moreover, even if the Court were to consider the attached exhibits, they do not provide conclusive evidence regarding when Pallak was served discovery. Accepting the facts in the Complaint as true, Plaintiff served discovery shortly before the inspection of his cell. Defendant's explanation that such inspections are routine may be considered at the summary judgment stage.

Third, Defendants' argument that a "mere reference" to litigation is insufficient to plausibly allege causation finds no support in the caselaw cited by Defendants or in the actual circumstances of the alleged retaliatory search. Plaintiff alleges that Pallak did more than "merely reference" this litigation; he alleges Pallak referred to the litigation as "fraudulent" and did so while engaging in the alleged retaliatory conduct. Pallak's comment regarding this litigation and the circumstances under which the comment was made, serves as circumstantial evidence of retaliatory motivation.

Defendants reliance on *Thomas v. Slusher*, No. 1:17-cv-794, 2018 WL 931301, at *6 (N.D. Ohio Feb. 16, 2018), is misplaced. Defendants cite *Thomas* for the proposition that a "mere reference to this lawsuit does not establish a causal connection between Plaintiff's protected conduct and any adverse action that would deter him from continuing with the lawsuit." (Doc. No. 72 at 15; *see also*, Doc. No. 88 at 5). In finding that "a general reference to [plaintiff] as a filer is insufficient to deter a litigant of ordinary firmness," the court was addressing element two – whether an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct – not causation. *Id*. In *Thomas*, the court held that the plaintiff did adequately allege causation with regard to other adverse actions when the

17

defendant was alleged to have "referred to [plaintiff] as 'causing trouble' in reference to his litigation activities when she took negative action toward him." *Id*. at \*7.

Relying upon *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008), Plaintiff argues Pallak's disparaging comments regarding the lawsuit while he "inspected" Plaintiff's cell, soiled his clean laundry, and confiscated his authorized medical items, is circumstantial evidence that the adverse action was motivated by retaliation. In *Harris*, the plaintiff alleged defendant aggressively attempted to convince the plaintiff's potential employer that the plaintiff was guilty of a crime for which he had been acquitted in retaliation for plaintiff filing a civil claim against the defendant. *Id*. at 519-20. During the conversations with the potential employer, the defendant references plaintiff's lawsuit. *Id*. The court held that the "mention of [plaintiff's] civil suit during the course of her conversation with the recruiters constitutes powerful circumstantial evidence that her other remarks were motivated by retaliatory animus." *Id*. at 520.

Defendants' attempt to distinguish *Harris* on ground that the defendant in that case made more than one retaliatory statement is unpersuasive. Even at the summary judgment stage, Pallak's statement regarding Plaintiff's "fraudulent litigation" would likely create a question of fact regarding intent. On a motion to dismiss, the standard is lower; Plaintiff need only plausibly allege a causal connection. He has met this standard.

18

Case 3:19-cv-00270   Document 113   Filed 09/30/21   Page 18 of 19 PageID #: 899

## V. CONCLUSION

For the reasons stated, the motion to dismiss (Doc. No. 71) will be GRANTED, in part, and DENIED, in part. The motion to dismiss will be GRANTED with regard to the claims against Defendants Trevor Matthews and Jennifer Lane. The motion to dismiss will be DENIED with regard to the claims against Jennifer Cobbs, Nicholas Pallak, and Kevin Cole.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE