IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DUSTIN STANTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:19-cv-00270 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE |
| RUBY JOYNER, et al., | ) | NEWBERN |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a motion to dismiss Plaintiff's Amended Complaint filed by Defendants the Metropolitan Government of Nashville and Davidson County ("Metro") and Sheriff Daron Hall (collectively "Defendants").[1] (Doc. No. 73). Plaintiff responded to the motion (Doc. No. 83) and Defendants filed a reply (Doc. No. 87).

### I. BACKGROUND[2]

**A. The Assault**

This action arises out of an assault on Plaintiff Dustin Stanton by another inmate while both were housed in a restrictive housing unit at the Davidson County Maximum Correctional Center (the "Metro Jail") in Nashville, Tennessee. (¶ 10). Inmates may be placed in restrictive

---

[1] For purposes of this motion, the Court refers to Metro and Sheriff Darron Hall as the "Defendants." The remaining Defendants in this case filed a separate motion to dismiss, which the Court addressed separately. (*See* Order and Memorandum, Doc. Nos. 113, 114).

After briefing on this motion was complete, Plaintiff filed a Second Amended Complaint (Doc. No. 107). The Second Amended Complaint does not add claims or parties. Although Defendants' motion to dismiss was filed with regard to the Amended Complaint (Doc. No. 63), the parties filed supplemental briefs to address in the effect of the amended factual allegations on the pending motions to dismiss. (*See* Doc. Nos. 108 and 109). The Court construes the motion to dismiss as moving to dismiss the operative complaint, which is the Second Amended Complaint.

[2] Unless otherwise specified, the facts in this section are as alleged in the Second Amended Complaint (Doc. No. 107). For ease of reference, citations to ¶ __ are to the Second Amended Complaint.

1

housing for a variety of reasons, including disciplinary, medical, and administrative reasons, or for protective custody. (¶ 11). Plaintiff was placed in restrictive housing with an "administrative status" designation, after he requested to be placed in protective custody. (¶¶ 12-15).

On February 24, 2019, fellow inmate Josh Raines, beat Plaintiff about the head and body in the Metro Jail recreation yard. Plaintiff alleges Raines, who was awaiting transport to prison, was placed in the restrictive housing unit due to his disciplinary status as a "disruptive individual who posed an extra threat to the safety and security of the Metro Jail, its residents (including Mr. Stanton,) and its staff." (¶ 17).

Although Metro Jail policy requires inmates in the restrictive housing unit to be in full restraints (belly chain, wrist restraints, and leg irons) when they are outside of their individual cells, on the day of the assault, Raines was not restrained in leg irons and his wrist restraints were applied too loosely so that Raines was able to slip his hands from the restraints. (¶¶ 34, 38-45). Plaintiff, on the other hand, was fully restrained, and therefore unable to defend himself from the assault. In addition, Plaintiff claims that when he was attacked by Raines, there were more than twice as many inmates in the recreation yard than is allowed by written policy.[3] (¶ 19). Plaintiff alleges this was not an isolated event and that officers routinely allowed disciplinary status inmates in the recreation yard with inmates who had requested protective custody and routinely allowed more than six inmates in the recreation yard at the same time. (¶¶ 119, 121).

---

[3] Metro Jail had two written versions of the Standard Operating Procedure ("SOP") for "Out of Cell" time. (¶¶ 52, 52.1). One SOP provided that "[a]t no time will there be more than 6 inmates secured in any one section of the rec yard, unless space constraints dictate otherwise (too many house alone / rec alone)." (¶ 52). This SOP contained an effective date of November 29, 2018. (¶¶ 52-53). A second SOP with the same effective date does not include the limitation on the number of inmates allowed in any one section of the recreation yard. (¶ 53). In the supplemental briefing, Defendants explain that the SOP limiting the number of inmates in the recreation yard to six was actually not in effect at the time of Plaintiff's altercation. They state that the effective date was not updated following a revision and that the written policy limiting the number of inmates in the recreation yard should have been identified as a "draft." (Doc. No. 108). Questions regarding which of the policies was in effect at the time of the assault are not appropriate for resolution on a motion to dismiss.

2

Officer Nicholas Pallak was one of two supervising officers responsible for security operations the day of the assault. Plaintiff alleges that Pallak's failure to require subordinate officers to follow policies and procedures was a known problem (¶ 77). Plaintiff alleges that, prior to the assault, Pallak "received a letter of reprimand for his 'failure to enforce policies and procedures' and 'failure to hold[] [his] staff accountable' for ignoring safety rules." (*Id*.). Officer Trevor Matthews, one of the subordinate officers who allegedly applied Raines' wrist restraints too loosely so that Raines was able to slip his hands out of the restraints, had a history of failing to follow policies and procedures related to inmate safety. (¶¶ 36-39, 41, 43, 73-74). Plaintiff alleges that despite these violations, Matthews did not receive additional training. (¶ 79).

Plaintiff brings claims for violation of his Eighth and Fourteenth Amendment rights against Sheriff Darrin Hall, in his official capacity, and against Metro, based on three Metro Jail policies: (1) allowing administrative status and disciplinary status inmates to be in the recreation yard together; (2) allowing more than six Restrictive Housing Unit inmates to be in the recreation yard at the same time in violation of written policies; and (3) failure to train or retrain officers regarding policies and procedures directly affecting inmate safety. (¶¶ 131-151). Plaintiff claims these policies were the direct and proximate cause of the injuries he suffered at the hands of Raines. (¶¶ 134-36, 139-41, 150-51).

## II. PROCEDURAL HISTORY

Plaintiff initiated this case *pro se* on April 3, 2019, (Doc. No. 1), and the Court reviewed Plaintiff's claims pursuant to the Prison Litigation Reform Act. (*See* Order, Doc. No. 5). The Court dismissed claims that Officers Lane, Matthews, and Cobbs violated Plaintiff's Eighth Amendment rights by failing to properly restrain Raines and/or ensure he was properly restrained before entering the recreation yard. (*Id*. at 6-7). The Court held that "such claims of officers failing to

3

'professionally d[o] th[eir] job' allege mere negligence," which is insufficient to support a constitutional claim. (*Id.* at 7 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). The Court also dismissed several other defendants and claims no longer at issue in the current iteration of the complaint. The Court found Plaintiff stated non-frivolous claims against three defendants, Jennifer Cobbs, Kevin Cole, and Nicholas Pallak, for violation of his Eighth Amendment rights and ordered process to issue on that claim. (*Id.* at 8).

Defendant Cobbs, Cole, and Pallak moved to dismiss based on qualified immunity. (Doc. No. 16). The Court denied the motion to dismiss and appointed counsel for Plaintiff. (*See* Order, Doc. No. 30, adopting Report and Recommendation, Doc. No. 28; and Order Appointing Counsel, Doc. No. 31).

With assistance of counsel, Plaintiff filed an Amended Complaint. (Doc. No. 63). The Amended Complaint reasserts claims related to the assault against correctional officers Jennifer Cobbs, Kevin Cole, and Nicholas Pallak, as well as two officers, Jennifer Lane and Trevor Matthews, who were named in the original complaint, but dismissed on initial review (collectively "the Officer Defendants"). (*Id.*). The Amended Complaint also adds a claim for First Amendment Retaliation against Officer Pallak, and against Darron Hall in his official capacity as Sheriff of Davidson County (the Davidson County Sheriff's Office was named in the original complaint), and against the Metropolitan Government of Nashville and Davidson County, Tennessee. (*Id.*).

The defendants moved to dismiss. (*See* Doc. Nos. 71, 73). After briefing on the motions to dismiss was completed, with leave of Court, Plaintiff filed a Second Amended Complaint. (Doc. No. 107). The Second Amended Complaint amends allegations to reflect that Metro Jail had two written SOPs with the same effective date. One SOP limited the number of inmates in an area of

4

the recreation yard to six, the other contains no such limitation. The parties filed supplemental briefs addressing the effect of the amendments on the pending motions. (Doc. Nos. 108, 109).

On September 30, 2021, the Court issued an Order granting in part, and denying in part, the motion to dismiss filed by the individual officer defendants. (*See* Order and Memorandum, Doc. Nos. 113, 114).

### III. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### IV. ANALYSIS

**A. Duplicative Claims**

Defendants seek to dismiss the claims against Sheriff Hall on grounds that they are duplicative of the claims against Metro while simultaneously seeking dismissal of the claims against Metro as untimely. The parties agree that the official capacity claims brought against Sheriff Hall are effectively a suit against his employer Metro. (Def. Br., Doc. No. 74 at 6; Pl. Br., Doc. No. 83 at 9); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Carter v. Cornwell*, 983 F.2d 52 (6th Cir. 1993). Defendant cites a number of cases in which district courts have dismissed official capacity claims on this basis. (*See* Doc. No. 74 at 6).

5

The Court declines to do so in this instance, particularly because Defendants simultaneously seek to dismiss the claims against Metro on grounds that they are untimely. Moreover, Rule 12(b)(6) does not require dismissal of redundant claims. "Motions to dismiss test the validity of the complaint … a claim that is redundant is not necessarily invalid." *Doe v. Corr. Corp. of Am.*, No. 3:15-cv-68, 2015 WL 4067765, at *3 (M.D. Tenn. Jul. 2, 2015) (quoting *Conner v. Borough of Eddystone, Penn.*, No. 2:14-cv-6934, 2015 WL 1021363, at *2 (E.D. Pa. Mar. 6, 2015)); *see also*, *Doe No. 1 v. Springboro Community Sch. Dist. Bd. of Ed.*, No. 1:19-cv-785, 2021 WL 1516157 at *3 (S.D. Ohio Apr. 15, 2021) ("[T]he Sixth Circuit has never required the courts in this Circuit to dismiss official capacity claims on the basis of redundancy … [a]nd numerous courts in this circuit have found redundancy – alone – to be an insufficient cause for dismissal.") (collecting cases).

## B. Timeliness and Relation Back of Amendments

Defendants Hall and Metro seek dismissal of the claims against them on grounds that they were not filed within the one-year limitations period and are therefore untimely. The parties do not dispute that the limitations period for Section 1983 claims is one year, that the original complaint was filed within the limitations period, and that the amended complaint was filed outside the limitations period.[4] Therefore the newly asserted claims will be time barred unless they relate back to the date of the original pleading.

---

[4] *See* Def. Br., Doc. No. 74 at 7; Pl. Br., Doc. No. 83 at 8-10; Doc. No. 1 (original Complaint filed April 3, 2019, regarding claims arising from events that took place on February 24, 2019); Doc. No. 63 (First Amended Complaint filed December 28, 2020); *see also, Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (statute of limitations for Section 1983 claims in Tennessee is one year). Plaintiff filed a Second Amended Complaint (Doc. No. 107) on July 6, 2021, which does not add any claims or parties not included in the First Amended Complaint.

The relation back of amendments is governed by Federal Rule of Civil Procedure 15(c). Under Rule 15(c)(1), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment;
>
>> (i) received such notice of the action that it will not be prejudiced in defending the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Through the original *pro se* complaint, Plaintiff attempted to bring claims against the Davidson County Sheriff's Office, and official capacity claims against Sheriff Hall and the individual defendants. (*See* Doc. No. 1). The Court dismissed these claims during its initial review. (Doc. Nos. 5, 6). The Amended Complaint repleads the failure to protect claim against Sheriff Hall in his official capacity and adds a claim against him for failure to train and also alleges claims against Metro– expressly naming Metro as a defendant for the first time.

Defendants argue the new claims do not relate back to the date of the original complaint. (Doc. No. 74 at 7-8). Defendants' largely conclusory argument that the amended claims do not relate back to the original pleading is premised on the assumption that, for purposes of Rule 15(c), the original pleading includes only those claims which survived PLRA screening; a position for

7

Case 3:19-cv-00270 Document 122 Filed 11/08/21 Page 7 of 18 PageID #: 945

which Defendants cite no authority. (Doc. No. 74 at 8). They note that because the claims against Sheriff Hall and the Davidson County Sheriff's Department were dismissed on initial review, neither of these parties were served. Apparently working from the theory that both Sheriff Hall and Metro are new parties, Defendants argue that the claims against them do not relate back because there was "no mistake as to the identity of Sheriff Hall or Metro" and that "Metro would be prejudiced by having to defend Plaintiff's untimely claims." (*Id.*). Defendant also claims that Plaintiff "had ample time to amend his original Complaint well within the limitations period." (*Id.*).

Addressing only the relation back of the claims against Metro, Plaintiff argues relation back is appropriate under Rule 15(c)(3) because his original *pro se* complaint inadvertently misidentified the correct party, naming the Sheriff's Office rather than Metro.[5] He contends Metro, whose municipal legal department has been managing the employees' defense, has been on notice of the claims in this case and will not be prejudiced by allowing him to "clarify" that the claims originally brought against the Sheriff's Office would have been brought against Metro if Plaintiff had known which was the proper defendant. In addition, Plaintiff argues the official capacity claims in the original complaint were, "in all respects other than a name, to be treated as a suit against the [governmental] entity." (Doc. No. 83 at 9 (citing *Taylor v. D.C.S.O.*, No. 3:17-cv-1359, 2019 WL 1114870, at *1 (M.D. Tenn. Mar. 11, 2019) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))).

---

[5] The Court notes that the heading to the relevant section in Defendants' memorandum states "All Claims Against Metro Are Time-Barred and Do Not Relate Back," while the body expands this assertion to encompass "new claims against Sheriff Hall and Metro." (Doc. No. 74 at 7). It is not clear whether the reference to "new claims" against Sheriff Hall is intended to refer only to the failure to train claim that was not included in Plaintiff's original *pro se* complaint or if Defendants consider all of the claims against Sheriff Hall to be "new" because the previously asserted claims against him did not survive initial review.

As stated above, Defendants have offered no authority in support of their premise that the original complaint for purposes of the Rule 15(c) includes only those claims and parties that survived PLRA screening. The Amended Complaint was filed within the time allowed by the Amended Case Management Order (Doc. No. 59). Accordingly, for purposes of this motion, the Court will consider whether the claims in the amended complaint relate back to Plaintiff's original *pro se* complaint.

With regard to the claims against Sheriff Hall, because he was originally named as a Defendant, the Court need only consider whether the claims in the Amended Complaint "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Because Defendants' argument is premised on the assumption that both Sheriff Hall and Metro are "new parties" for whom relation back is considered under a separate subsection of Rule 15, they have not specifically addressed this question. However, it is apparent from the face of the complaints that the newly alleged claims arose out of the same conduct or occurrence set out the original *pro se* complaint – the assault on Plaintiff. *See Thaxter v. Metro. Gov't of Nashville and Davidson Cty.*, No. 3:16-cv-02801, 2020 WL 3546818, at *14 (M.D. Tenn. Jun. 30, 2020) (noting that, in applying the Rule 15(c)(1)(B), "the Sixth Circuit has focused on factual allegations rather than specific causes of action or legal theories") (citing *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 249 (6th Cir. 2000)).

With regard to the claims asserted against Metro, the analysis is somewhat different. Rule 15(c)(1)(B) allows relation back for amendments only as to the original parties of the complaint, or to correct a misidentified defendant, not to add a new party as defendant. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("Rule 15(c)(1)(B) allows relation back

9

of an amendment asserting a "claim or defense," but it does not authorize the relation back of an amendment adding a new *party*.") (emphasis in original).

Rule 15(c)(1)(C) allows relation back of an amendment changing "a party or the naming of the party against whom a claim is asserted" when: (1) the claims arose out of the same transaction or occurrence as the original complaint; (2) within the period provided by Rule 4(m) for serving the summons and the complaint, the party to be brought in by amendment "received such notice of the action that it will not be prejudiced in defending the merits"; and (3) the party to be brought in by amendment know or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C).

Defendants' arguments on this aspect are not well developed. Defendants state that the only claims that survived initial review were the failure to protect claims against three of the individual defendants; there was no mistake about the identity of Sheriff Hall, Metro, or their roles in operating the Davidson County Sheriff's Office facilities; Plaintiff had ample time to amend his original complaint within the limitations period; and that Metro should not be prejudiced by having to defend untimely claims. (Doc. No. 74 at 8). In the reply brief, Defendants develop their argument somewhat, arguing that they were not on notice of the new claims asserted in the Amended Complaint because the original Complaint did not contain any allegations of inadequate training or of any unconstitutional practice and neither Sheriff Hall nor Metro was served with the original Complaint. (Doc. No. 87 at 2).

As stated above, Defendants have offered no authority for their assertion that the original complaint consists only of claims which survive the Court's initial review under the PLRA. Notably, Metro does not claim it was unaware of the action or that Plaintiff attempted to bring

10

claims against Sheriff Hall and the Davidson County Sheriff's Department. Instead, they argue that Metro did not have notice of the specific allegations regarding failure to train or that Plaintiff's injuries were the result of an official policy or custom. (Doc. No. 87 at 1-2).

The Court finds Metro's argument that it did not have notice unpersuasive. While the claims in the original Complaint were insufficiently pleaded, there is no question that Plaintiff intended to bring claims against the government agency he contends failed to protect him from assault. He not only brought official capacity claims against the individual officers and Sheriff Hall, but also attempted to sue the entity he thought was responsible, the Davidson County Sheriff's Department. It follows that Metro has arguably been on notice throughout this litigation that it could be called to answer for the harm to Plaintiff.

That Plaintiff was at least arguably mistaken about the correct entity to sue is apparent from his attempt to sue the Davidson County Sheriff's Department, the entity he thought was responsible for the Metro Jail. Defendants' conclusory statement to the contrary is without explanation or support. (*See* Doc. No. 74 at 8 ("There was no mistake about the identity of Sheriff Hall or Metro, or of their roles in operating the [Davidson County Sheriff's Office] facilities.")).

Moreover, Metro has not identified any prejudice it would suffer by being called to defend these claims now. (*See* Def. Br., Doc. No. 74 at 8 (stating only that "Metro should not now be prejudiced by having to defend Plaintiff's untimely claims")). Indeed, given Defendants companion argument that the claims against Sheriff Hall are "duplicative" of those against Metro, it is difficult to conceive of actual prejudice that would result from allowing the claims against Metro to proceed. For these reasons, the motion to dismiss the claims on grounds that they are duplicative and untimely will be denied.

11

Case 3:19-cv-00270   Document 122   Filed 11/08/21   Page 11 of 18 PageID #: 949

## C. Municipal Liability – Failure to Protect

Prison officials have a duty under the Eighth and Fourteenth Amendments to "take reasonable measures to guarantee the safety of inmates," including a duty "to protect prisoners from violence at the hands of other prisoners."[6] *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984), and *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988), cert. denied 488 U.S. 823 (1988)). However, not "every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials." *Id*. at 834 (internal quotations omitted). "For a failure-to-protect claim to lie against a prison official, the plaintiff must show that: (1) 'objectively,' he was 'incarcerated under conditions posing a substantial risk of serious harm'; and (2) the official acted with 'deliberate indifference' to inmate safety, meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021).

Municipalities cannot be held liable under Section 1983 on a respondeat superior theory. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v, Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). To find a municipality liable for a constitutional violation under Section 1983, a plaintiff must show both a violation of a constitutional right and that the "moving force" behind the alleged violation was a municipal policy or custom. *Id.* "There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or

---

[6] As a pretrial detainee, Plaintiff's constitutional claims are for violation of his substantive due process rights under the Fourteenth Amendment. *Beck v. Hamblen Cty., Tenn.*, 969 F.3d 592, 601 (6th Cir. 2020). The Sixth Circuit has held "that *Farmer*'s test for a prisoner's claim under the Eighth Amendment applies 'with equal force'" in this context. *Id*.

supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 880 (6th Cir. 2020) (quoting *Jackson v. City of Cleveland*, 925 F.3d 973, 828 (6th Cir. 2019)).

Plaintiff claims Sheriff Hall and Metro violated his Eighth Amendment rights by failing to protect him from violence by another inmate due to three Metro Jail policies: (1) allowing administrative status and disciplinary status inmates to be in recreation yard together; (2) allowing more than six Restrictive Housing Unit inmates to be in the recreation yard at the same time in violation of written policies; and (3) failing to train or retrain officers regarding policies and procedures directly affecting inmate safety. (¶¶ 131-151). Plaintiff claims these policies were the direct and proximate cause of the injuries he suffered at the hands of Raines. (¶¶ 134-36, 139-41, 150-51).

1. Inmates in the Recreation Yard

Defendants argue that Plaintiff's claims associated with policies regarding comingling of administrative status and disciplinary status inmates and the number of inmates in the recreation yard at one time do not sufficiently allege a constitutional violation. Defendants contend Plaintiff does not have a constitutional right to participate in recreation with only inmates of the same security classification or in groups of six or fewer inmates and has not demonstrated that permitting administrative status and disciplinary status inmates to be in the same recreation yard together creates a substantial risk of inmate assaults that was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." (Doc. No. 74 at 9 (quoting *Farmer*, 511 U.S. at 842). Defendants also argue that because Plaintiff has not given examples of other "assaults against administrative status inmates by disciplinary status inmates during recreation at DCSO facilities," he cannot establish that Metro was on notice that mixed-status recreation creates a

13

substantial risk to inmate safety. (Doc. No. 79 at 9-10). Finally, Defendants argue that Plaintiff has failed to show that that number of inmates in the recreation yard was the cause of his injuries or conversely that limiting the number of inmates would have prevented the assault. (*Id*. at 11).

Defendants cite several cases in which courts have found a plaintiff failed to demonstrate that comingling pretrial detainees with convicted inmates constituted deliberate indifference to the safety of the pretrial detainee. (Doc. No. 74 at 9). These cases, however, do not establish a bright-line rule that comingling inmates can *never* constitute deliberate indifference to safety. In each of the cited cases, the plaintiff relied only on the fact of comingling of convicted inmates with pretrial detainees. The courts generally held that the fact that an inmate had been convicted of some unspecified crime was not by itself sufficient to establish that housing these inmates with pretrial detainees posed a substantial risk of serious harm to the pretrial detainees. *See Latham v. Oshefski*, No. 1:19-cv-P131-GNS, 2019 WL 6178684, at *5 (W.D. Ky. Nov. 20, 2019) (dismissing plaintiffs claim that was based "generally on being a pretrial detainee housed with state inmates"); *Collier v. Haywood Cty.*, No. 14-1324-JDT-EGB, 2015 WL 1758075, at *6 (W.D. Tenn. Apr. 17, 2015) (housing pretrial detainee with inmates convicted of unspecified crimes was insufficient to establish deliberate indifference when plaintiff did not allege any jail employee was aware that any convicted inmate presented a risk to plaintiff); *Baskin v. Wayen Cty.*, No. 05-070475, 2006 WL 2844543, at * 4 (E.D. Mich. Sept. 29, 2006) (granting summary judgment for defendant when plaintiff did not present evidence of any incidence of convicted and sentenced criminals becoming violent with pretrial detainees).

Here, however, Plaintiff alleges that the convicted inmates were not merely "convicted of unspecified crimes," they were on disciplinary status. To be sure, it is conceivable that an inmate could be placed on disciplinary status for reasons unrelated to their dangerousness. But, at least

14

with regard to some of the disciplinary status inmates, Raines in particular, they were on disciplinary status because they were "disruptive" and "posed an extra threat to the safety and security of the Metro Jail, its residents (including Mr. Stanton), and its staff." (¶ 17).

Defendants' argument that Plaintiff must show "prior instances of unconstitutional conduct demonstrating that [Metro] has ignored a history of abuse," is not well taken. (Doc. No. 74 at 10 (citing *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005). Deliberate indifference does not require a showing of a history of abuse. It requires a showing that the defendant was aware of the risk and failed to take measures to abate it. *Reedy*, 988 F.3d at 912. Certainly, a history of inmate attacks is one way to make such a showing, but it is not the only way. *See Farmer*, 511 U.S. at 842 (stating that one example of a way to show a defendant had actual knowledge of risk is through evidence of "longstanding, pervasive, [and] well documented" substantial risk if inmate attacks).

With regard to the policy of allowing more than six inmates in the recreation yard together, Defendants argue it is not unconstitutional to permit more than six inmates to be in a recreation area at the same time. (Doc. No. 74 at 10). Defendants assert there is "simply no authority within the Sixth Circuit regarding these circumstances (allowing more than six inmates in the same recreation area at once) where the court has found that such conduct amounted to deliberate indifference to an inmate's safety. (*Id*. at 10-11). Defendant adds that Plaintiff has not established that the overcrowded recreation yard was the cause of his injuries. (*Id*. at 11).

Plaintiff argues that Defendants mischaracterize his claim as asserting a constitutional right to limit the number of inmates in the recreation yard to five. Plaintiff explains that his claim is based on his constitutional right to be reasonably safe in Defendants' custody, not to recreate with a specific number of others. Plaintiff explains his allegations related to the number of inmates in the recreation yard is that by ignoring a written policy limiting the number of inmates in the

15

recreation yard at one time – a policy Plaintiff alleges was in place to protect against a substantial risk of serious harm to inmates resulting from overcrowding the recreation yard – Defendants violated his constitutional right to be reasonably safe from harm. (¶¶ 54, 123). Plaintiff alleges that officers routinely allowed more than six inmates in the recreation yard together, and on the day of Plaintiff's assault allowed more than twelve inmates to recreate together, directly resulting in Raines being able to assault Plaintiff. (¶ 140-141). Plaintiff argues that this policy of allowing the recreation yard to be overcrowded, particularly when considered in tandem with the policy of comingling administrative status and disciplinary status inmate, created a substantial risk of serious harm.

In light of the written policy limiting the number of inmates in the recreation yard, Plaintiff has alleged plausibly that Defendants knew overcrowding the recreation yard presented a substantial risk of serios harm to inmates. That the risk is potentially compounded by placing disciplinary status inmates together with administrative status inmates in an overcrowded recreation yard, only adds to the inference that Defendants knew these actions posed a substantial risk to inmate safety and disregarded the risk.

2. Failure to Train

A failure to train claim requires a plaintiff to show "that the municipality, through its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees; or 2) the fact that the constitutional violation alleged was a patently obvious and 'highly predictable consequence' of inadequate training." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 355-56 (6th Cir. 2013); *see also*, *Shadrick v. Hopkins Cty*., 805 F.3d 724, 738 (6th Cir. 2015) (Plaintiff must show "(1) the municipality's officers engaged in a pattern of comparable constitutional violations

or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] had failed to train its employees to handle recurring situations presenting an obvious potential' for a violation.").

Plaintiff asserts Defendants were on notice of a pattern of officers failing to follow policies and procedures related to inmate safety. Plaintiff cites letters of reprimand received by Supervisor Pallak and Officer Matthews. The letter to Officer Matthews was one of "numerous letters" regarding his failure to follow policies and procedures related to inmate safety. (¶¶ 73-74). Pallak received a letter of reprimand from his superiors noting a pattern of failing to enforce policies and procedures relating to inmate safety. (¶ 77). The letter noted that "this is not the first conversation" with Pallak about his "decision making and lack of leadership." (¶ 78).

Defendants argue that violation of policy is not a *per se* constitutional violation and the allegations regarding these letters are devoid of sufficient detail to show that Defendants were on notice of a pattern of *constitutional* violations. Defendants also argue that the allegations do not show that the violations of policies and procedures referenced in the letters were the same policies and procedures that allegedly resulted in Plaintiff's assault.

Plaintiff does not dispute that "failure to follow internal policies, without more, [does not] constitute deliberate indifference." *See Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018). *See also, Meier v. County of Presque Isle*, 376 F. App'x 524, 529 (6th Cir. 2010). However, neither are the internal policies and procedures wholly irrelevant, particularly at this stage of the litigation. Moreover, Plaintiff does not allege a *per se* constitutional violation based on failure to follow regulations, instead he argues that the fact that the Metro Jail had certain policies in place to protect inmate safety suggests Defendants were aware that failure to follow those policies could result in a substantial risk of harm to inmates.

With regard to the letters of reprimand, Plaintiff argues the letters, particularly the letter to Pallak noting a pattern of failing to enforce safety procedures, show Defendants were on notice that their training with regard to inmate safety was deficient. The Court agrees. To be sure, the evidence may ultimately show that failure to follow certain policies and procedures related to inmate safety was unrelated to the policies and procedures at issue here or that the violations of which Defendants were allegedly on notice were not of constitutional magnitude. At this stage, however, construing the amended complaint in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, the Court finds Plaintiff has stated a claim for failure to train.

## V. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. No. 73) will be **DENIED**. An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE